# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SECRETARY OF US DEPARTMENT OF LABOR, | \| | Case no. 5: 19 CV 863 |
| Plaintiff, | \| | JUDGE PEARSON |
| | \| | |
| -vs- | \| | |
| | \| | DEFENDANTS COMBINED OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |
| AMERICAN MADE BAGS LLC, Et Al., Defendants. | \| | |

Now comes Tommy Armour II (ARMOUR) and American Made Bags LLC  (AMB) and hereby jointly opposes the Plaintiff's motion for summary judgement on the Amended Complaint, ECF Doc#64.  As grounds for opposition the Plaintiff's evidence offered in support of the motion is conclusory, misleading and does not show there is no genuine dispute for trial and that Plaintiff is entitled to prevail on the merits of its claims and is entitled to judgment without reaching trial as a matter of law within the meaning of Federal Civil Rule 56 (a).[1]  Wherefore, in spite of the dramatic briefing presentation on motion by the Plaintiff attacking the Defendants as if the matter is personal; the pending MSJ should be OVERRULED as there is a genuine dispute for trial in this matter even assuming all recitation of FMLA legal standards by the Plaintiff is correct.

---

1.     This opposition brief tests only the sufficiency of the Plaintiff's motion arguments and evidence and is not supported by a defense affidavit given the Defendants have not assisted the undersigned in the preparation of a defense to the motion by reading MSJ materials and advising as to finding any false statement, and helping counsel dispute facts and support the denial with a sworn affidavit.   A motion to withdraw counsel was denied by this Court.  *See* Defendant's counsel status report on this issue filed on 8-18-2021.

1

OPPOSITION ARGUMENT

The "Undisputed Facts" are Disputed

The Defendant takes exception to the Plaintiff characterizing any of its facts as "undisputed" as it has on MSJ.  (Def. MSJ at 1, FN 2).   The Defendant has not and does not concede a thing.  This case presents a Fair Labor Standards Act overtime pay and records keeping dispute between the United States Secretary of Labor and Tommy ARMOUR II and AMERICAN MADE BAGS and the Plaintiff says it is entitled to a judgement of $94,893.34 plus liquidated damages.   (MSJ at vi).  The Plaintiff says the relevant time period for assessing alleged FLSA overtime and records keeping violations at issue in this case is between March 2015 to September 2019.  (MSJ at vi).   Starting its argument off by calling the Defendants a liar, the Plaintiff fumes it has no evidence that the Defendants are FLSA continuing law violators after September 2019 but will do something about it if it ever gets any proof.  (MSJ at vii, FN 1).  Very nice.  I was not aware you can get a judgment on MSJ by telling the Court to not believe anything the non-moving party  says about something the moving party cannot prove.

Defendant Relies on BANIG Affidavit subject to Exclusion under Civil Rule 56 (c)(4)

Moreover, the Declaration of Department of Labor Investigator Stephen BANIG offered in support of MSJ attempts to make points in this FLSA violation liability case from the time periods in 2015 to 2019 by referring to Defendant's alleged FLSA violations in March 2021 to March 2014 (ECF Doc #67-1, Par. 2, 3 (D), 5, 6) which are at best inadmissible character evidence that may not be considered on a motion for summary judgment.  (Fed. Evidence Rule 404 (a)(1); Civil Rule 56 (c)(2)).

Then there are the two unknown person 2017 mystery witness "interview" statements chock full of inadmissible hearsay and unfounded opinion attached to BANIG's declaration at

2

ECF Doc#67-1, Pg. ID 465-467, 470 – 473 making claims about FLSA violations that do not establish a foundation showing any of the witnesses are competent to testify as to FLSA legal standards being violated in spite of the fact they do just that albeit in a very indirect way.  Talking about coaching a witness?  BANIG filled in all of the blanks for these two witnesses for the specific purpose of anticipating a claim by ARMOUR that the employees are independent contractors and not W-2 employees, i.e. mystery witness remark:  "I don't own any equipment..." (ECF Dc 67-1 Pg ID 471) and read their "interview" statements he penned back to them, then they signed off, including having them claim ARMOUR and not AMB paid them their wages as if creating an affidavit.   Note that the undesigned demanded that the Plaintiff identify these witnesses (ECF Doc#18) so they could be confronted and the validity of their claims evaluated, the Court upheld the Plaintiff's refusal to identify the witnesses and now here they are being unfairly used as mystery witnesses to testify unopposed against the Defendant.   The BANIG affidavit should be stricken.

<u>ARMOUR is Excludable as a Defendant and CBA preemption-FLSA preclusion is a Defense</u>

This claim about ARMOUR being the one who paid employees wages and is a proper party to this action at MSJ 11-23 (ECF Doc#1780-1781) is betrayed by the fact that not one single pay record submitted by the Plaintiff shows ARMOUR paid any of the Plaintiff's witnesses anything in his own name and in fact the Plaintiff admits the Defendant ran a Union shop covered by a CBA, and in fact Article 9 of the 2019 CBA (ECF Doc# 72-2, Pg. ID 1726, and the 2010 CBA in Exhibit 72-1 at Article VII, page ID 1703) makes overtime pay at the FLSA floor level a term of a collective bargaining agreement for employees of AMB and there is NO evidence submitted on MSJ that any of the Plaintiff's employee witnesses grieved any CBA overtime violation in this case as required to exhaust remedies prior to bringing this lawsuit given pay and benefits at AMB

is governed by a CBA and resolving the overtime violation issue is intertwined with interpretation of the CBA overtime rules and using arbitration remedies.    (Exhibit 72-1, page ID 1710; Ex. 72-2, page ID 1732).   FLSA base pay is based on the rate of pay the employer and the employee have negotiated and agreed upon. *See Sobczak v. AWL Indus., Inc*., 540 F. Supp. 2d 354, 357-61 (E.D.N.Y. 2007).  Here the Plaintiff must admit the bargaining parties over pay in this case are a Union and AMB and not ARMOUR.    Although it is also true FLSA remedies are normally individual and not collective bargaining agreement remedies per *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 745 (1981) ("The FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process...") here the Plaintiff by supporting its case with CBA materials exempted itself from this usual situation and this case is preempted by Section 301 of the LMRA (29 USC 186 aka "Taft Hartley Act") as a labor relations dispute under a CBA.  Note that *Barrentine* was brought into question under *Gilmer v. Interstate/Johnson Lane Corp.*, 500 US  20, 26 (1991) which required exhaustion of arbitration remedies in a statutory age discrimination claim.  *Compare, Freeman v. River Manor Corp*., 17 CV 5162 (ED New York 2019); *Rodriguez-Depena v. Parts Authority, Inc*., et al., 2017 WL 6327827 (2nd Cir. 2017) requiring exhaustion of remedies under CBA in an FLSA overtime pay dispute.

Moreover, according to the Plaintiff's counsel Defendant Tommy ARMOUR is the sole owner of American Made Bags (AMB) and he made all key operations decisions, hired the help, set the pay rates, set prices for products AMB made, and negotiated with customers and suppliers and that he "is the company."  (MSJ at 1).   "He is the company" is not a legal test for anything and there is no such thing as liability by association.   The Complaint in this case indicates that there are two Defendants including ARMOUR and AMB which I agree alone may constitute employers in most cases, but here they are being sued solely as an "enterprise engaged in

4

commerce" which is a composite entity, and AMB is also a limited liability corporation (LLC) that employed ARMOUR.  (ECF Doc#64 at par. 3, pg. ID 429).   Therefore, although it is true ARMOUR may be an employer as may be AMB if sued as individuals and the pleadings show separate Defendant entities exist in general, that fact is, AMB and ARMOUR were sued not as individuals but a composite "enterprise" which has not been named as jointly and severally liable with AMROUR and AMB as the liable Defendant.  Defendant has not attempted to pierce a corporate veil in this case and deprive ARMOUR of LLC ownership immunity from LLC debts under Ohio RC 1704.48 (B) and if ARMOUR has created AMB debts they are not his to pay as he was always acting as an officer of an LLC at all times relevant in this case.   It is clear the employees in issue in this case work for AMB and ARMOUR only in their capacity as an "enterprise engaged in commerce" which is the sole business unit that is exposed to liability under the Code of Federal Regulations.  (MSJ at  29 CFR 779.221.   None of the employees cited by the Plaintiff in its case are designated as employees of ARMOUR and none of them were paid by ARMOUR and BANIG's investigation materials submitted in support of MSJ do not show that ARMOUR employed anyone.   Accordingly, the Plaintiff should not be awarded summary judgment on any claim against ARMOUR nor even continue to hear this Section 301 preempted/precluded case and in either event there is a factual dispute at hand to resolve in trial as to these issues which are central to the Plaintiff's case regardless of the merits of any mathematical calculations by BANIG dealing with overtime pay alleged owed by the Defendants.

5

<u>The Math and Independent Contractors</u>

The Plaintiff accuses the Defendants of FLSA overtime pay practices that convert all employee hours worked regardless of whether some were over 40 hours a week to straight pay time in BANIG's declaration at pages 4 – 17 ECF Doc#451-465, MSJ at 6-10, ECF Doc# 1775 – 1779; MSJ at 15-21: ECF Doc#1784 - 1790.  Because Defendant ARMOUR has not cooperated in preparing a defense to these overtime claims as discussed in the undersigned's recent status report where his motion to withdraw as counsel was overruled; I cannot attack these numbers with a Defendant's specific justification and rebuttal but I will point out that the data is not admissible for want of an evidentiary foundation given not one single alleged FLSA victim in this case has sworn out ANY evidence that these numbers are accurate, were not paid, and that the hours alleged paid for represented actual work being performed for a wage and not a bonus or other compensation.  It is also not clear whether some or all of the AMB employees were independent contractors not entitled to FLSA overtime pay as ARMOR testified his sewers for example owned their own sewing machines and worked hours they set and even at home without supervision. (ARMOUR depo at 31, 86).

<u>ARMOUR depo at 127 speaking as to AMB employee status:</u>

**Q.** And sticking with this list that we went through, is it your position that everyone on the list is an independent contractor?  **A.** Is it my position?  **Q.** Yes.  **A.** Yes. **Q.** So that even like office workers, like Misty Tomlin?  **A.** Yes. ***

<u>ARMOUR testified at 86 - 87 -89  -94 of his deposition:</u>

**Q.** So workers could come in and work at any time?  **A.** Any time. That was part of the allure of our company, was that you could watch your kids all day, if you had children, and when your husband got home from work, you could come in and work from 4 to 10 at night or whatever and have a double income home, without having child care.  ***

**Q.** And the equipment is the sewing machine, correct? **A.** Correct.  **Q.** I believe you said that could be provided either by you or by the worker?  **A.** Correct. A lot of people -- sewers are

6

a rare breed. When they find a machine that they like, they want to stick with it, because they know it and they learn it. Like Milja right here, this first lady, she has an automatic sewing machine, so she only wants to use her automatic. She doesn't like to use manual machines, because she can make more money with the automatic.  ***

Q.  How then about what kind of supervision, if any, are the sewers subject to? **A.** No, they are not supervised, they come in, they see what needs to be made, they make it and put it back in the bin so that it can be boxed up. They confer with each other a lot.  They say, "Hey, I don't know how to sew this.
Can you help me." One Laotian lady may go over to a Thai lady and say, "Hey, I can help you," and they work together like that. ***

**A.** Correct. Basically, everyone started out in their homes, and they have worked by the piece from their homes. And then eventually people decided they couldn't work from their homes and they were like, "Hey, can we come to a facility?" So we supplied a facility. ***

An independent contractor is not entitled to FLSA overtime pay and the definition of an independent contractor is not defined by the FLSA but determined on a totality of the facts and circumstances case by case basis which can include an evaluation of not only the classic right of control with respect to making choices on how and when to perform work and with what equipment, or the "economic realities", but also the employee's  "investment" in the Defendant's business.  *Donovan v. Bandel*, 736 F.3d 1114 (CA6 1984); *Keller v. Miri Microsystems LLC,* 781 F.3d 799, 810 (6th Cir. 2015).   Independent contractor status law is ever changing and is hardly a matter that can be decided short of trial but it DOES make out a defense to this case.

I also note at Page 16 (ECF Doc#16) of the Plaintiff's MSJ that ARMOUR actually shows he has attempted to comply with the FLSA by setting a wage that will cover overtime expenses for AMB employees should they encounter an overtime pay situation.   This was all done based on BANIG's advice in personal discussions with ARMOUR on AMB property!  (ARMOUR depo at 38-53).

From Armour depo at 38 (Pg ID 511:  Q.    Do you recall Mr. Banig conducting an investigation -- **A.** Absolutely.  **Q.** -- in 2014?  **A.** Absolutely, yes. **Q.** And do you recall meeting with him on several occasions?  **A.** Yes, I do. **Q.** Do you recall him discussing the requirements of

the FLSA with you?  **A.** With the what?  **Q.** Sorry, Fair Labor Standards Act is the law that -- **A.** Yes, yes. Several times we went over everything. I invited him into my office and showed him all my records and he informed me at  that time of the Fair Labor Standards Act. \*\*\*

From *Id.* at 42 page ID 515:

**A.** Oh, yes, we [Armour and Banig] talked in-depth about the law and we discussed on how moving forward that we would handle it, and we talked about people that wanted to work longer hours, over 40, <u>that we could lower their pay to a lower amount;</u> <u>and then pay them time and a</u> <u>half on those hours, so that it would end up being the same amount</u>, as if they were getting straight time, so that it would be fair for me and fair for the individual working. \*\*\*

So here we have a situation where the Plaintiff is relying on the accuser's advice on how to comply with the FLSA and then the accuser, BANIG and the DOL, turn around and use the Plaintiff's conduct in reliance on that advice to accuse him of FLSA violations in this case.

And moreover, Plaintiff has testified he has added incentive pay for sewing product piece rate production work in addition to AMB hourly pay, so there is confusion in the record as to what money is hourly wage compensation in BANIG's pay calculations and what money is actually piece rate or speed work compensation for an AMB employee hitting production targets that are not part of an hourly wage agreement, and in some cases the employees would negotiate a wage based on what they wanted to make based on current economic concerns in their life at certain times. *See*, ARMOUR depo at 135-143, Pg. ID 608-616; 147-152, Pg ID 620-625 . The Plaintiff's counsel argument that the AMB employees were paid an "artificially low wage rate" to defeat FLSA standards (MSJ at 15-21, ECF Doc# 1784 - 1790) in light of BANIG telling ARMOUR while visiting an AMB office how to set wage rates lower to avoid overtime issues, the very thing Plaintiff counsel calls an artificial wage rate, is absurd and a good faith defense to all the charges about unpaid overtime in the primary and liquidated damages components of the Plaintiff's case. As Defendant testified at pages 43 and 44 (Page ID #516-517) of his deposition:

**Q.** So now I am going to go back to what you said a minute ago about lowering workers'

8

hourly rate and then paying overtime on the lower rate. Did I capture that correctly? **A.** Okay. So we have people that work there, people that were working, you know, so many hours. So let's say they worked 50 hours.  <u>He said anybody working over 50 hours, I don't care if you consider them subcontractors or whatever, anybody that is in this facility, working more than 40, I would want to see time and a half.</u>  So we talked about lowering the wage from $14 an hour to, say, $9 an hour or 8.55, whatever the minimum wage was at the time, and then paying them time and a half on all of their hours over 40. So it would come out to the same amount of money, as if they were getting straight time at the higher wage. **Q.** Is that what you did after the first investigation? **A.** Correct.  **Q.** <u>Is that what you did straight through until September 2019? **A.** Correct.  **Q.** And who decided to make that change at American Made Bags, was that your decision? **A.** Well, we had discussed it years prior, Steve and I.</u>

All of the pay calculations in the pending MSJ are based on BANIG's mathematical computations, not the Plaintiffs, that have not been confirmed accurate by an injured witness, and moreover, pay in this case is a bargained for event and subject to a CBA as discussed *supra*.  There is no evidence any AMB employee grieved a "artificially low pay rate."   The fact is AMB and its employees are permitted to make an agreement as to what the pay scheme will be for them at AMB.   Here we are contesting not an AMB pay scheme on Plaintiff's motion, but BANIG's opinion of what an AMB employees actual wage ought to be and this opinion whether it is backed up by a spread sheet or not is not admissible evidence to prove someone else's wage loss.  Plaintiff is not entitled to summary judgment on its wage calculations.

<u>Record Keeping Issues</u>

The Plaintiff's MSJ at 29 (Pg ID 1798) suggests that the Defendants did not keep accurate pay records for FLSA purposes but is using them to try to get over 90 thousand bucks in FLSA violation damages from the Defendant without a trial.   Funny.   BANIG's pay calculations in his affidavit are all based on his interpretation of AMB wage and hour records.   All of it.   The Plaintiff's motion is groundless on its face for obvious reasons.   Are the time keeping records pretty or fancy and well organized?  No, but they were good enough for BANIG to rely on them

9

to demand $94, 893.34 in liquid damages at page 25 of its motion for summary judgment without a trial.

<u>Liquid Damages</u>

Plaintiff's punitive or liquid damages case at MSJ 25-29 (ECF Doc# 1794 -1798) is based on data mining and conjecture.  Liquidated damages are not available if the Defendant can show a good faith basis for not paying FLSA overtime.  (Def. MSJ at 26).  Here as demonstrated, the Defendant worked with Mr. BANIG and came up with a plan to reduce AMB's exposure to overtime pay problems after a first 2014 investigation was conducted with the full cooperation of the Defendants with the Department of Labor and it is undisputed the Defendant relied on BANIG's advice going forward to 2019.  *See*, ARMOUR depo at 38-53 (Pg ID. 511-526).  BANIG then used the Defendants reliance on that advice to charge them with new FLSA violations in this instant case including accusing the Defendant of offering his employees an artificially low wage rate.   Total nonsense as explained *supra* given the wage rate was BANIG's idea, not the Defendants.    A trial is needed to demonstrate what happened in the ARMOUR-BANIG meetings at AMB in more detail and I cannot provide it given my client has not cooperated with me in producing a defense to MSJ affidavit as previously explained.  However, the record is enough as it is to show there is a genuine dispute for trial on this record.

Lastly, the INJUNCTION issue is moot, ARMOUR is no longer running AMB.

10

## CONCLUSION

IN CONCLUSION:  It has been held that it is not the province of the court on motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).  Where different ultimate inferences may be drawn from the evidence presented by the parties; the case is not one for summary judgment. *Id*.  In light of the foregoing discussion, the Plaintiff's motion for summary judgment should be OVERRULED.

<div style="margin-left: 50%;">

Respectfully Submitted,

/s/ Michael Terrence Conway, Esq.
Michael T. Conway, Esq.
Ohio Reg. No. 0058413
SD Texas Reg. No. 925875
Michael T. Conway and Company
3456 Sandlewood Dr.
Brunswick, Ohio 44212
(330) 220-7660 (voice-fax)
Xray2Alpha@aol.com

</div>

11

<u>SERVICE</u>

Counsel for the Defendant hereby certifies that the foregoing document was served on his

client and Counsel for the Plaintiff at the following address on 25 AUG 2021 by this Court's

ECF service:

Thomas W. ARMOUR II (by email to client)

-and-

Matthew M. Scheff, Esq.
US Dept of Labor
Office of the Solicitor
1240 East Ninth Street, Room 881
Cleveland, Ohio 44199
scheff.matthew@dol.gov

Respectfully Submitted,

/s/ Michael Terrence Conway, Esq.
Michael T. Conway, Esq.