PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SECRETARY OF UNITED STATES DEPARTMENT OF LABOR, | ) ) | |
| | ) | CASE NO.  5:19CV863 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| AMERICAN MADE BAGS, LLC, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 74] |

Pending before the Court is Plaintiff's Motion for Summary Judgment.  ECF No. 74.  The

motion has been fully briefed.  ECF Nos. 81, 84.  The Court has reviewed the filings, exhibits,

and applicable law.  For the reasons stated below, Plaintiff's motion is granted.

## I.  Background[1]

### 1.  Defendant American Made Bags, LLC and Defendant Thomas W. Armour II

Defendant American Made Bags, LLC ("AMB") is a manufacturer of promotional

products, including, but not limited to, tote bags, messenger bags, and backpacks.  ECF No. 67-2

---

[1]  The parties have certified to the Court that "they have not reached any stipulations with regard to dispositive motions."  ECF No. 73.  "The trial court is not required to search the entire record to establish that a genuine issue of material fact exists."  *Malee v. Anthony & Frank Ditomaso, Inc.*, No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (citing *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008)) (abrogated on other grounds).  "'[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c),' the court may determine that fact is undisputed."  *Malee,* No. 1:16CV490, 2018 WL 1805402, at *2 (quoting Fed. R. Civ. Pro. 56(e)(2)).

(5:19CV863)

at PageID #: 490. Defendant Thomas W. Armour II ("Armour") was the sole owner of Defendant AMB and often made important operational decisions, including (1) setting corporate policies such as human resources and payroll, (2) hiring decisions, and (3) setting, and negotiating, the price of goods manufactured by AMB.[2] *Id*. at PageID #: 537, 576, 638 – 639.[3] Between 2014 and 2019, Defendant AMB generated approximately $1 million in revenue, and nearly all its customers and suppliers were located outside the State of Ohio.[4] *Id*. at PageID #: 541 – 542.

A majority of Defendants' workers were sewers/seamstresses, printers/screen printers, helpers/floor hands, or designers/artists.[5] *Id*. at PageID #: 568 – 569, 574, 577, 585. Many worked for extended periods of time, lasting multiple years, or even decades. *Id*. Defendants had several individuals in supervisory roles, as (1) Misty Tomlin ("Tomlin") served as an Office Manager/Secretary tasked with answering the phone, managing payroll, and handling bookkeeping, (2) Clint Bott served as a supervisor for the helpers and printers, (3) Milica Vukojevic served as a "manager/sewer[,]" and (4) an individual served as a "manager/cutter." *Id*. at PageID #: 566, 580, 595.

---

[2] Defendants represent to the Court that Defendant Armour "is no longer running AMB." ECF No. 81 at PageID #: 1823.

[3] Defendant Armour testified that "[b]asically [he is] the company." ECF No. 67-2 at PageID #: 521.

[4] Defendant Armour testified that 99 percent of Defendant AMB's sale are to customers outside of the State of Ohio. ECF No. 67-2 at PageID #: 541.

[5] Defendant Armour testified that sometimes, sewers are referred to as seamstresses, printers are referred to as screen printers, helpers are referred to as floor hands, and designers are referred to as artists. ECF No. 67-2 at PageID #: 568 – 569, 574, 577, 585.

(5:19CV863)

Sewers, as their title suggests, primarily sewed items such as bags and backpacks, often using Defendants' sewing machines, thread, and fabrics.  *Id*. at PageID #: 558.  Sewers needed one year of experience, and, once hired, could be trained in two weeks or less.  *Id*. at PageID #: 559 – 560.  About half of the employees relevant to this case were sewers.  *Id*. at PageID #: 585 – 596.  Helpers performed various responsibilities, such as cutting material after it was sewn, catching shirts after they were printed, and installing drawstrings on back packs.  *Id*. at PageID #: 563-65, 568, 574.  About one-fifth of the employees relevant to this case were helpers.  *Id*. at PageID #: 585 – 596.  Printers handled the printing of shirts using screen printing machines provided by Defendants.  *Id*. at PageID #: 569.  About one-tenth of the employees relevant to this case were printers.  *Id*. at PageID #: 585 – 596.  Designers were primarily tasked with creating the artwork used on Defendants' products.  *Id*. at PageID #: 577 – 579.  Only one of the employees relevant to this case was a designer.  *Id*. at PageID #: 588.

While Defendants provided sewers with sewing machines, thread, and fabric, some sewers opted to use their own sewing device, and, usually, sewers would also bring their own scissors.  *Id*. at PageID #: 503 – 504, 560.  If a sewer's work product was not satisfactory, Defendant Armour would direct the sewer to re-do the work, although that was rare because the sewers typically produced quality work.  *Id*. at PageID #: 562 – 563.  Printers would utilize their own tools to spread ink, but Defendants provided a printing machine, materials to print on (*e.g.*, fabric, shirts, bags, etc.) and typically, ink.  *Id*. at PageID #: 496 – 497, 571 – 572.

### 2.  Defendant AMB's Collective Bargaining Agreements

Defendant AMB's predecessor, Akron Promotional Products, signed a collective bargaining agreement with the International Chemical Workers Council Local No. 852-c ("ICWUC Local 852-c") (the "First CBA"), which remained in effect from April 1, 2007, until

3

(5:19CV863)

February 4, 2019, when the First CBA was replaced by an agreement between Defendant AMB and International Chemical Workers Council Local No. 211-c ("ICWUC Local 211-c") (the "Second CBA").  ECF Nos. 72-1, 72-2.  The First CBA provided that the ICWUC Local 852-c is the "exclusive representative of the bargaining agency of the plant," which is defined as "[a]ll production, shipping, [and] receiving[] at the employer[']s Akron Plant, excluding all office and plant clerical employees, guards, professional employees and all supervisors as defined by the National Labor Relations Act."  ECF 72-1 at PageID #: 1697.  The Second CBA contains virtually identical language.[6]  ECF 72-2 at PageID #: 1720.  The First CBA and Second CBA contain a wage schedule setting hourly rates of pay along with regular raises.  ECF Nos. 72-1 at PageID #: 1718, 72-2, PageID #: 1739.  Also, both the First CBA and the Second CBA require Defendants to pay overtime hours at one and one-half times the regular rate of pay.  ECF Nos. 72-1 at PageID #: 1703, 72-2 at PageID #: 1727.  The First CBA provides, "[e]mployees will be required to perform the duties to which they may be assigned."  ECF No. 72-1 at PageID #: 1705.  The Second CBA similarly provides, "[e]mployees will be required to perform the duties to which they may be assigned," and "the methods, processes and means of operating the facility are wholly and exclusively the responsibility of [Defendant AMB]."  ECF  No. 72-2, PageID #: 1723, 1727.

---

[6]  The Second CBA recognizes ICWUC Local 211-c as the "exclusive representative of the bargaining agency of the Facility," which is defined as "[a]ll production, at the Employer's Akron OH facility, excluding all office and clerical employees, guards, professional employees and all supervisors as defined in the National Labor Relations Act."  ECF No. 72-2 at PageID #: 1720.

(5:19CV863)

### 3.  The First Investigation of Defendants

In 2014, Plaintiff investigated Defendants for Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201, *et seq.*) violations.  ECF No. 67-1 at PageID #: 448.  Ultimately, Plaintiff found that Defendants committed multiple violations of the FLSA by (1) misclassifying their employees as independent contractors, (2) failing to pay overtime, and (3) failing to create and maintain required records.  ECF No. 48-3 at PageID #: 361.  The same year, Wage and Hour Investigator Stephen Banig ("WHI Banig") met with Defendant Armour and articulated both the overtime payment and record maintenance obligations in accord with the FLSA.  ECF No. 48-4 at PageID #: 370.  As a result of the investigation, Defendants agreed to pay over $47,000 in back wages to 38 employees and agreed to "comply with all applicable provisions of the [FLSA] in the future."  ECF No. 48-5 at PageID #: 373.  The back wages were to be paid in installments but Defendants failed to meet their obligation, as the final payment was due July 20, 2016, but they were still making payments in August 2020.  ECF 67-2 at PageID #: 527.

Along with their monetary obligations, Defendants agreed to several non-monetary commitments designed to ensure future FLSA compliance.  Defendants were instructed to: (1) conduct independent audits, (2) attend an FLSA seminar, (3) provide FLSA training to employees, (4) provide written assurance to Plaintiff regarding future compliance, including an explanation of how Defendants will comply in the future, and summaries of any changes in pay and record keeping practices, and (5) include new categories on non-exempt employees' pay stubs that set forth regular hours worked, overtime hours worked, regular rate, overtime rate, amount of regular pay, and amount of overtime pay.  ECF No. 48-5 at PageID #: 375 – 376, 528 – 530.  Defendants failed to meet these obligations as well.  *Id.*

5

(5:19CV863)

### 4.  Defendants' FLSA Violations from March 2015 – February 2018 and January 2019 – September 2019[7]

Defendants' records for the period of March 2015 to February 2018 establish employees worked overtime hours and were not compensated accordingly.  ECF Nos. 48-2 at PageID #: 314 – 41, 67-1 at PageID #: 465 – 67, 470 – 473.[8]  From January 2017 to February 2018, Defendants' time records show that Defendants paid workers their normal hourly rate for overtime hours, instead of one and one-half times their regular rate.  *Id*., *Id*.

Between March 2015 and February 2018, Defendants' wage records did not consistently include pertinent information required under the FLSA, including (1) employees' regular rates of pay, (2) employees' straight time earnings, (3) employees' total pay for overtime hours, if any, and (4) employees' total wages.  ECF No. 67-1 at PageID #: 464 – 465.  Also, Defendants did not provide employees with pay stubs and paid all wages with handwritten checks that contained no indication as to how employees' wages were calculated.  *Id*. at PageID #: 465.  Defendants' employees had no way of confirming how their wages were calculated or whether they were paid overtime, and if so, how much.  *Id*.

Between January 2019 and September 2019, Defendants failed to pay workers overtime wages at one and one-half times their regular rates for hours worked in excess of forty hours per week, similar to their actions from January 2017 to February 2018.  ECF Nos. 67-1 at PageID #: 457, 67-10.  During the same period, Defendants continued to violate the FLSA by (1) paying

---

[7]  Between March 2018 and December 2018, Defendants' records show they correctly paid overtime wages to all employees, except Clint Bott.  FLSA violations as they relate to Clint Bott are explained below.

[8]  Defendants failed to produce any records of wages paid for the period of March 2015 through December 2016 (ECF No. 67-1 at PageID #: 451 – 452).

(5:19CV863)

workers an artificially low normal hourly rate for the first forty hours, (2) paying workers a

purported overtime rate at one and one-half times the artificial hourly rate for hours worked in

excess of forty hours per week, and (3) paying workers a purported piece rate or bonus,

consisting of a number of pieces multiplied by a rate per piece (*e.g.*, 1,000 x $0.20).  ECF No.

67-1 at PageID #: 457.  Elaborating on the first action, Defendants paid employees an artificially

low hourly rate, which was used to calculate overtime wages, and supplemented each

employee's pay with "production bonuses."  *Id*.  Defendant Armour testified that these

"bonuses" were either a "piece rate" or a "speed bonus[,]" used as "a way to get [employees] a

way to make the money that they wanted to earn per week," and a way to "add[] money to their

hourly rate."  ECF 67-2 at PageID #: 608 – 609, 615 – 616.  These bonuses were used to pay

employees the same fixed hourly rate for all hours worked, including overtime hours.  *Id*. at

PageID #: 623 – 624.

### 5.  Defendants' FLSA Violations regarding Clint Bott between March 13, 2015 and August 30, 2019

Between March 13, 2015 and August 30, 2019, Defendants paid Clint Bott a fixed

amount each week, without regard to the number of hours worked, even when he worked more

than forty hours in a work week.  ECF No. 67-1 at PageID #: 464.  As a result, Clint Bott

received his normal pay rate for overtime hours worked during this period.  *Id*.

### 6.  The Second Investigation of Defendants

In May 2017, WHI Banig initiated a Second Investigation and met with Defendant

Armour to review Defendants' records.  Nearly one year later, in February 2018, WHI Banig met

with Defendant Armour again and advised him that Defendants were still violating the FLSA and

would owe additional back wages.  ECF No. 48-3 at PageID #: 363.  WHI Banig calculated back

7

(5:19CV863)

wages owed by determining employees' regular rate, dividing that number by two, and then multiplying the resulting half-time rate by the number of overtime hours worked.  ECF No. 67-1 at PageID #: 452, 456, 463 – 464.  Pursuant to these calculations, Defendants owe the workers $94,893.34 in unpaid overtime compensation ($56,998.23 for overtime violations between March 2015 and February 2018 and $37,895.11 for overtime violations between March 2018 and September 2019).  Id. at PageID #: 451.

## II.  Discussion

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Scola v. Publix Supermarkets, Inc., 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  The fact under dispute must be "material," and the dispute itself must be "genuine."  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  Scott v. Harris, 550 U.S. 372, 380 (2007).  In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict.  Id.  ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In order to survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"  Baker v. City of Trenton, 936 F.3d 523, 529 (6th Cir. 2019) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith

(5:19CV863)

*Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved" by a factfinder. *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

Plaintiff moves for summary judgment on their two causes of action, (1) Failure to Pay Overtime Wages in Violation of 29 U.S.C. §§ 207 and 215(a)(2), and (2) Failure to Make, Keep, and Preserve Required Records in Violation of 29 U.S.C. §§ 211(c) and 215(a)(5). Plaintiff submits that summary judgment is appropriate because Defendants "failed to pay their employees premium overtime wages for hours worked over forty in a workweek," in violation of the FLSA, from March 2015 to September 2019. ECF No. 74 at PageID #: 1766. In response, Defendants oppose summary judgment because "Plaintiff's evidence offered in support of the motion is conclusory, misleading and does not show there is no genuine dispute for trial[.]"[9] ECF No. 81 at PageID #: 1813.

_____

[9] Defendants' counsel previously sought, but was not granted, the opportunity to withdraw as counsel, citing a lack of responsiveness and professionalism from

9

(5:19CV863)

### 1. Application of FLSA

As a threshold matter, the Court must first analyze the applicability of the FLSA.  The

FLSA applies to an "enterprise engaged in commerce or in the production of goods for

commerce[.]"  29 U.S.C. §203(s)(1)(A).  This is defined as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

*Id*.  Examining the record, namely deposition testimony from Defendant Armour, Defendant

AMB qualifies as an enterprise engaged in commerce or in the production of goods.  Defendant

Armour testified that (1) Defendant AMB is engaged in the business of producing promotional

products, including, but not limited to tote bags, messenger bags, and backpacks, and (2) from

2013 through 2019, Defendant AMB's annual gross revenue was approximately $1 million, and

in all years was in excess of $500,00.00.  ECF No. 67-2 at PageID #: 490, 542 – 543.

Defendants do not offer any evidence to dispute that Defendant AMB engaged in commerce or

the production of good for commerce, nor do they dispute that Defendant AMB's gross annual

revenue exceeded $500,000.  The Court finds that Defendant AMB is an employer to which the

FLSA applies.

---

Defendants.  ECF No. 80.  Defendants' counsel stated to the Court that the opposition would be limited because he is "fighting with one hand tied behind [his] back" and "[the opposition] will be very limited for want of a defense affidavit."  ECF No. 80 at PageID #: 1810 – 1811.  The Court's ruling on Defendants' counsel's motion to withdraw speaks for itself.  ECF No. 78.  No new counsel made an appearance and Defendants' counsel continued representing both the individual and corporate Defendants.

(5:19CV863)

The Sixth Circuit has recognized that "[o]ne who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an "employer" for the purposes of FLSA." *U.S. Dep't of Lab. v. Cole Enterprises, Inc., 62 F.3d 775, 778 (6th Cir. 1995)*. The corporation itself also becomes an employer. *Id.* In this case, Defendant Armour testified that he was the sole owner of Defendant AMB and exercised significant control, often (1) setting corporate policies, (2) making hiring decisions, and (3) setting, and negotiating, the price of goods manufactured by Defendant AMB. ECF No. 67-2 at PageID #: 537, 576, 638 – 639. *See Wilson v. PrimeSource Health Care of Ohio, Inc., No. 1:16-CV-1298, 2017 WL 2869341, at *12 (N.D. Ohio July 5, 2017)* (concluding that because individual was President, CEO, and owner of the defendant company and "had the ability to control the operation of all of the [defendant] companies," such as "hiring, firing, and compensation decisions[,]" both he and the defendant company qualified as employers under the economic reality test). Defendants are employers under the FLSA.

Next, it must be determined whether Defendants' workers were employees or independent contractors, as the FLSA applies only to employees. The Sixth Circuit applies the "economic reality" test for this determination. *Keller v. Miri Microsystems LLC, 781 F.3d 799, 806 (6th Cir. 2015)*. This requires a balancing of the following six factors:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; ... 5) the degree of the alleged employer's right to control the manner in which the work is performed[; ... and 6)] whether the service rendered is an integral part of the alleged employer's business.

11

(5:19CV863)

*Gilbo v. Agment, LLC*, 831 F. App'x 772, 775 (6th Cir. 2020) (quoting *Keller*, 781 F.3d at 807).

No single factor is dispositive. *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 523

(6th Cir. 2011).

      The record is rife with support for the Court to conclude that Defendants' workers were

employees, not independent contractors.

### A. Permanency of the Relationship and Importance to Defendant AMB

      "The first factor examines the 'length and regularity of the working relationship between

the parties' because independent contractors 'often have fixed employment periods and transfer

from place to place as particular work is offered to them, whereas 'employees' usually work for

only one employer and such relationship is continuous and indefinite in duration.'" *Gilbo*, 831

F. App'x at 776 (quoting *Keller*, 781 F.3d at 807). The related sixth factor "asks whether the

worker provides services that are integral to the employer's business, and '[t]he more integral the

worker's services are to the business, then the more likely it is that the parties have an employer-

employee relationship.'" *Gilbo*, 831 F. App'x at 778 (quoting *Keller*, 781 F.3d at 815).

      Beginning with the first and sixth factors, Defendant Armour testified that many of the

workers, who were essential to the business of Defendant AMB, performed services for

Defendant AMB for years, and in some instances, decades. ECF No. 67-2 PageID #: 568 – 569,

574, 577, 585. *Gilbo*, 831 F. App'x 776 – 778 (concluding that the first and sixth factors favored

a finding of workers being classified as employees because they worked for Defendant for

almost a year and the business "could not function without the services" of the workers).

### B. Degree of skill

      "This factor assesses the complexity of the work performed, how the worker

(5:19CV863)

acquired their skill, and the length of the worker's training period." *Gilbo*, 831 F. App'x at 776

(citing *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055–56 (6th Cir. 2019)).

Transitioning to the second factor, sewers, who accounted for half of Defendants' workers, were

required to have a year of experience, and one to two weeks of training.  ECF No. 67-2 at

PageID #: 559 – 560.  While the rest of the workers (helpers, cutters, and designers) did not

require any training, Defendant Armour acknowledged the high-level skill that designers

possessed.  *Id*. at PageID #: 579 – 580.  While this factor may be a closer call than others, no

single factor is dispositive, and a majority of Defendants' workers required training or had

previously developed a high-level skill.

### C.  Investment in Business Equipment

"This factor requires comparison of the worker's total investment to 'the company's total

investment.'"  *Off Duty Police Servs., Inc.*, 915 F.3d at 1056 (quoting *Keller*, 781 F.3d at 810).

Regarding the third factor, Defendant Armour would provide sewing machines, thread, fabric, a

printing machine, materials to print on (*e.g.*, fabric, shirts, bags, etc.) and typically, ink.  ECF

No. 67-2 at PageID #: 496 – 497, 503 – 504, 560, 571 – 572.  While some workers would bring

their own tools, Defendants provided much of the primary equipment needed to help workers

perform their job function.  *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir. 1992) (explaining

that plaintiff was an employee in part because defendant employer supplied plaintiff with

essential equipment such as an office and administrative services).

### D.  Worker Ability to Attain Profit or Loss

"This factor examines whether workers have 'opportunit[ies] for greater profits based on

[their] management and technical skills.'"  *Gilbo*, 831 F. App'x at 777 (quoting *Keller*, 781 F.3d

at 812). The fourth factor weighs in favor of Defendants' workers being employees because

13

(5:19CV863)

Defendants largely directed the opportunities for profits and loss of the company and, in turn, the wages of the workers. Defendant Armour testified that he often handles executive decisions, which include bargaining with third party vendors for projects to manufacture promotional materials. *Gilbo*, 831 F. App'x at 777 (holding the fourth factor favored employee classification because the defendant employer "handled the advertising, marketing, aesthetics, location, and maintenance of its building" so they "had substantial control over what opportunities the [workers] had to make profits").

### E. Degree of Control

"This factor focuses on the level of control that the employer has over its workers as well as whether the employer 'retains the right to dictate the manner' of the worker's performance." *Gilbo*, 831 F. App'x at 777 (quoting *Off Duty Police Servs., Inc.*, 915 F.3d at 1060). Regarding the fifth factor, Defendant Armour testified that he would sometimes request that workers re-do work if it was not satisfactory, but that was a rare occurrence, as the work often met quality expectations. ECF No. 67-2 at PageID #: 562 – 563. In addition, both the First and Second CBA provide in part that "[e]mployees will be required to perform the duties to which they may be assigned," and the Second CBA states, "the methods, processes and means of operating the facility are wholly and exclusively the responsibility of [Defendant AMB]." ECF No. 72-2, PageID #: 1723, 1727. Defendants exercised a considerable amount of control over the workers. This factor, therefore, tilts in favor of an employee classification.

Taken together, the Court finds that Defendants' workers were employees, and not independent contractors.

### 2. Failure to Pay Wages

Plaintiff asserts that Defendants failed to pay overtime wages to their employees,

14

(5:19CV863)

and instead paid them an artificially low hourly rate, then paid them their regular rate for overtime.  ECF No. 74 at PageID #: 1784 – 1790.  For support, Plaintiff references the wage records.  ECF Nos. 68, 69, 70, 71.  Defendants do not offer any evidence disputing the numbers in the wage records, even stating that they "cannot attack these numbers with a Defendant's specific justification and rebuttal[.]"  ECF No. 81 at PageID #: 1818.  Instead, Defendants argue that the data is not admissible because (1) none of the employees have testified to its accuracy, and (2) Defendant Armour testified that his employees owned their own sewing machines and worked hours they set on their own.[10]  *Id*.

  "The FLSA lays out a general rule that employees must be compensated one and one-half times their regular hourly pay for each hour worked in excess of forty hours per week."  *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 899 (6th Cir. 2012) (citing 29 U.S.C. § 207(a)(2)).  To claim an overtime violation under the FLSA, a Plaintiff must establish (1) an employer-employee relationship, (2) that the employees are covered, (3) the employees worked more than forty hours, and (4) that overtime was not paid.  *See* 29 U.S.C. § 207(a).  It is an employee's burden to "prove, by a preponderance of the evidence, that he performed work for which he was not properly compensated."  *Hunt v. Monro Muffler Brake, Inc.*, 769 F. App'x 253, 259 (6th Cir. 2019) (quoting *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015).

  The Court incorporates its earlier analysis pertaining to the applicability of the FLSA to establish elements one and two.  Focusing on elements three and four, Plaintiff has directed the

---

[10]  While objections to the admissibility of evidence are permitted under Fed. R. Civ. P. 56(c), Defendants' position that WHI Banig's Declaration would not be admissible at trial is unpersuasive because the report was prepared by WHI Banig himself, and consists of factual findings from a legally authorized investigation.  *See* Fed. R. Evid. 803(8)(A)(iii); 29 U.S.C. § 211(a).  The objections are overruled.

(5:19CV863)

Court to wage and hour records, which demonstrate that during varying times between March 2015 and September 2019, Defendants worked more than 40 hours during a work week and were not paid overtime wages at one and a half times their normal rate.  *See* ECF Nos. 67-1, 67-8, 67-9, 67-10, 67-11, 68, 69, 70, 71.[11]  Plaintiff also offers notes from two employee interviews (ECF No. 67-1 at PageID #: 470 – 473).  Collectively, the weight of this evidence is sufficient to create an inference that the workers were entitled to, and not paid, overtime wages.  *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015); *Garcia v. Sar Food of Ohio, Inc.*, No. 1:14-CV-01514, 2015 WL 4080060, at *4 (N.D. Ohio July 6, 2015); *Grosswiler v. Freudenberg-NOK Sealing Techs.*, No. 3:14 CV 1551, 2015 WL 4994304, at *3 (N.D. Ohio Aug. 19, 2015).  In response, Defendant does not cite to any evidence to create a genuine dispute of material fact as to whether Defendants worked in excess of forty hours or were not paid overtime.  This is fatal to Defendants' efforts to defeat summary judgment.  *White v. All About Cable Connections, LLC*, No. 1:12CV1708, 2013 WL 2949920 (N.D. Ohio June 13, 2013) (summary judgment in favor of plaintiff employee on FLSA claim of unpaid overtime wages because defendant employer offered no evidence to dispute plaintiff's claim); *Cf. Terry v. Pro-Mark Contracting, LLC*, No. 1:14 CV 2542, 2016 WL 3421399, at *4 (N.D. Ohio June 22, 2016) (concluding summary judgment not appropriate because movant failed to establish that they were an employer under FLSA as they did not offer any evidence they were an enterprise engaged in commerce).

---

[11]  ECF No. 67-1: Declaration of WHI Banig exhibits how Defendants did not pay workers for overtime wages and sets forth calculation methods used to calculate back wages owed; ECF No. 67-8: List of Employee Hourly Rates; ECF No. 67-9: Employee Information Cards; ECF No. 67-10: 2019 Ledger; ECF No. 67-11: Excerpt from Back Wage Calculations; ECF Nos. 68, 69, 70, 71: Wage records.

(5:19CV863)

Accordingly, Plaintiff is entitled to summary judgment on its claim of Failure to Pay Overtime Wages in Violation of 29 U.S.C. §§ 207 and 215(a)(2).

### 3.  Failure to Make, Keep, and Preserve Required Records

Plaintiff states that Defendants have failed to comply with statutory recordkeeping standards because the records are lacking in "critical information, such as employees' regular rates of pay, straight time earnings, total pay for overtime hours (if any), and employees' total wages." ECF No. 74 at PageID #: 1798.  In response, Defendants argue that the wage records satisfy FLSA standards because the pay calculations in which Plaintiff is relying on for damages purposes are derived from Defendants' wage records.  ECF No. 81 at PageID #: 1821 – 1822.

"[E]mployers must 'make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them] ... as necessary or appropriate for the enforcement of the provisions of' the FLSA." *Off Duty Police Servs., Inc.*, 915 F.3d at 1062–63 (quoting 29 U.S.C. § 211(c)).  This includes an employee's "daily and weekly hours, hourly rate of pay, daily or weekly straight-time earnings and overtime pay, and total wages per pay period." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 365 (6th Cir. 2019) (citing 29 C.F.R. § 516.2).

In this case, Defendants' wage records fall short of this standard.  As Plaintiff points out in the Declaration of WHI Banig, Defendants' wage records were deficient under the law.  In specific, the records lacked the following information:

| Time Period | Deficiencies |
|---|---|
| March 2015 – December 2016 | 1.  Records do not show regular hourly rate of pay (29 C.F.R. § 516.2(a)(6));<br>2.  Records do not show total daily or weekly straight-time earnings.  (29 C.F.R. § 516.2(a)(8)); |

17

(5:19CV863)

| | |
|---|---|
| | 3.  Records do not show total premium pay for overtime hours.  ([29 C.F.R. § 516.2(a)(9)](#)); <br> 4.  Records do not show total wages paid each pay period. ([29 C.F.R. § 516.2(a)(11)](#)); <br> 5.  Records do not show date of payment and the pay period covered by payment.  ([29 C.F.R. § 516.2(a)(12)](#)). |
| January 2017 to July 2017 | 1.  Records do not show regular hourly rate of pay.  ([29 C.F.R. § 516.2(a)(6)](#)); <br> 2.  Records do not show total daily or weekly straight-time earnings.  ([29 C.F.R. § 516.2(a)(8)](#)); <br> 3.  Records do not show total premium pay for overtime hours.  ([29 C.F.R. § 516.2(a)(9)](#)). |
| August 2017 to February 2018 | 1.  Records do not consistently show regular hourly rate of pay.  ([29 C.F.R. § 516.2(a)(6)](#)); <br> 2.  Records do not show total daily or weekly straight-time earnings.  ([29 C.F.R. § 516.2(a)(8)](#)); <br> 3.  Records do not show total premium pay for overtime hours.   ([29 C.F.R. § 516.2(a)(9)](#)). |
| January 2019 to September 2019 | 1.  Records do not show actual regular hourly rate of pay.  Amount listed as regular rate is artificial.  ([29 C.F.R. § 516.2(a)(6)](#)). |

ECF No. 67-1 at PageID #: 464 – 465.

Wage records devoid of pertinent information, similar to Defendants', have been found to fall short of FLSA standards.  *See, e.g.*, *Min & Kim, Inc.*, 919 F.3d at 365 (holding that employer violated FLSA recordkeeping requirements because over a period of over three years, the wage records did not include all of the required information, such as employees' hours); *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999) (concluding that FLSA record-keeping standards were violated because employer "failed to maintain records of the number of hours their employees actually worked each workday and the total number of hours they actually worked each workweek"); *Chao v. Akron Insulation & Supply, Inc.*, 184 F. App'x 508, 512 (6th

18

(5:19CV863)

Cir. 2006) (ruling that employer "failed to keep adequate time and wage records" because of inconsistent calculation of employee hours using of clock-in and clock-out times).

The record is devoid of, and Defendants do not direct the Court to, evidence sufficient to create a genuine material fact dispute on this issue. Accordingly, summary judgment in favor of Plaintiff is appropriate on its claim of Failure to Make, Keep, and Preserve Required Records, in violation of 29 U.S.C. §§ 211(c) and 215(a)(5) of the FLSA.

### 4. Damages and Injunctive Relief

"The FLSA provides that '[a]ny employer who violates [the FLSA's minimum wage or overtime provisions] shall be liable to the employee or employees affected' in the amount of the unpaid overtime compensation and in an additional equal amount as liquidated damages." *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838, 856 (6th Cir. 2019) (quoting 29 U.S.C. § 216(b)). "Despite the mandatory wording of that section, Congress has authorized district courts to reduce or decline to award liquidated damages under the FLSA 'if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that [the] act or omission was not a violation of the' FLSA." *Timberline S., LLC*, 925 F.3d at 856 (quoting 29 U.S.C. § 260).

"This burden on the employer is substantial and requires 'proof that [the employer's] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict.'" *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (quoting *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)). "To prove that it acted in good faith, an employer 'must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions.'" *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584–85 (6th Cir. 2004)

19

(5:19CV863)

(alteration in original) (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3rd. Cir. 1991)).  Plaintiff seeks relief in the form of unpaid overtime compensation.[12]  As support that they have acted in good faith, Defendant avers that they "attempted to comply with the FLSA by setting a wage that will cover overtime expenses for Defendant AMB employees should they encounter an overtime pay situation" which was "done based [WHI Banig]'s advice in personal discussions" with Defendant Armour.  ECF No. 81 at PageID #: 1819.

Plaintiff is entitled to relief in the form of unpaid overtime compensation.  Relying on and incorporating the above analysis, Defendants have violated the FLSA by failing to (1) compensate employees with overtime wages, and (2) make, keep, and preserve wage records.  In addition, Plaintiff is entitled to liquidated damages because Defendants have not proven they acted in good faith.  Based on the record before the Court, Defendants were subjected to two separate investigations, and counseled on FLSA requirements.  ECF Nos. 48-3, 48-4.  Also, there was a Settlement Agreement (ECF No. 48-5) in place, requiring Defendants to pay back wages and commit to several non-monetary obligations geared towards FLSA compliance.[13]  Defendant did not comply with any of the obligations under the Settlement Agreement.  ECF No. 67-2 at PageID #: 528 – 530.  Because Defendants did not take sincere or affirmative steps to comply with the FLSA, the Court finds there is no good faith defense limiting the imposition of liquidated damages.  *See Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d 895, 903 (N.D. Ohio 2006) (concluding that liquidated damages were warranted because "after the Dept. of Labor

---

[12]  Plaintiff requests $94,893.34, as that is the amount of back wages owed to Defendants' employees from March 2015 through September 2019.

[13]  Defendant Armour testified he "never read the contract" and instead just "signed it and paid the money."  ECF No. 67-2 at PageID #: 528.

(5:19CV863)

completed its investigation and informed [defendant] that [defendant's company] was not

meeting the FLSA requirements, [defendant] told the investigator […] that she would comply

with the Act[,]" but "[n]onetheless, she failed to do so").  Accordingly, Plaintiff is entitled to

$94,893.34 in unpaid overtime and liquidated damages.

Finally, Plaintiff seeks injunctive relief to prevent Defendants from violating the FLSA in

the future.  "The issuance of an injunction pursuant to [29 U.S.C. § 217] is within the reasonable

discretion of the trial court."  *Solis v. Milling Away, LLC*, No. 5:09CV2886, 2012 WL 359688, at

*8 (N.D. Ohio Feb. 2, 2012) (citing *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir.1992).

"[I]n exercising its discretion[,] the court must give substantial weight to the fact that the

Secretary seeks to vindicate a public, and not a private, right."  *Funtime, Inc.*, 963 F.2d at 113

(quoting *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987).  "When

exercising its discretion to enter an injunction the Court should consider: (1) the previous

conduct of an employer; (2) the employer's current compliance; and (3) the dependability of the

employer's promises of future compliance."  *Milling Away, LLC*, No. 5:09CV2886, 2012 WL at

8 (citing *Funtime, Inc.*, 963 F.2d at 113).

Applying the above considerations to the present case, the Court finds injunctive relief

against Defendants is appropriate.[14]  Incorporating much of the damages analysis above, the

record demonstrates that Defendants' previous conduct, which includes a disregard of FLSA

obligations and lack of compliance, warrants injunctive relief because (1) Defendants have a past

---

[14]  The Court has fulfilled its procedural obligations to impose such relief.  "[T]he injunctive relief provided by Section 17 of the FLSA is available only to the Secretary of Labor" and "is not available to private litigants."  *Perez v. Cathedral Buffet, Inc.*, No. 5:15CV1577, 2016 WL 4468111, at *2 (N.D. Ohio Aug. 24, 2016) (citing *Lorillard v. Pons*, 434 U.S. 575, 581 (1978)).

21

(5:19CV863)

and persistent history of committing FLSA violations and failing to comply with a Settlement

Agreement (ECF No. 48-5), and (2) remain in violation of FLSA overtime wage and

recordkeeping requirements.  *See Funtime, Inc.*, 963 F.2d at 114 (concluding injunctive relief

appropriate because defendant employer "exercised less than good faith in attempting to comply

with the FLSA" evidenced by (1) a civil monetary penalty following a 1985 Department of

Labor investigation, (2) additional violations continuing into 1989 and 1990, (3) a 1990 follow-

up investigation revealed continued FLSA violations, all of which collectively "do not

demonstrate likelihood of future voluntary compliance" by defendant employer); *Milling Away,*

*LLC*, No. 5:09CV2886, 2012 WL at 9 (finding injunctive relief appropriate because defendant

employer "entered into an agreement to make the delinquent wage payments to the employees

[…] but then failed without reasonable justification to make any payments").  Accordingly,

injunctive relief prohibiting Defendants from violating FLSA overtime and wage record

provisions is appropriate.

### III.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's Motion for Summary Judgment in

its entirety.  Plaintiff is awarded back wages of $94,893.34, liquidated damages of $94,893.34,

and injunctive relief.  A separate judgment entry will issue.

IT IS SO ORDERED.

February 15, 2022                                                    */s/ Benita Y. Pearson*
Date                                                                      Benita Y. Pearson
                                                                               United States District Judge